UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>JOHN DOE subscriber assigned IP address 73.219.67.199,<br><br>      Defendant. | Civil Action No. 25-cv-10973-PGL |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO SERVE THIRD-PARTY SUBPOENA PRIOR TO RULE 26(f) CONFERENCE**

LEVENSON, M.J.

Pursuant to Rule 26(d)(1) of the Federal Rules of Civil Procedure, Plaintiff Strike 3 Holdings, LLC ("Strike 3") has filed a Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference.[1] Plaintiff seeks a court order to permit limited discovery into the identity of Defendant, a John Doe known by the assigned Internet protocol address ("IP address") of 73.219.67.199, prior to a Rule 26(f) scheduling conference. Motion for Leave to Serve Third-Party Subpoena, Docket No. 6. Specifically, Strike 3 seeks leave to serve a subpoena upon Defendant's Internet service provider ("ISP") for the purpose of obtaining Defendant's name and address. The motion is appropriate for determination by the Court. *See* 28 U.S.C. § 636(b)(1)(A).

---

[1] There are a number of cases in this District filed by Strike 3 through the same counsel. Counsel has filed similar motions in those cases. Those filings feature almost identical papers, with substitutions made for the subscriber's IP address. This Court has issued similar orders in those cases.

For the reasons identified below, the Court GRANTS the motion, but also issues a protective order permitting Defendant to proceed anonymously using the "John Doe" pseudonym.

I.  **Background**

Taking Strike 3's representations as true for purposes of deciding this motion, the Court notes the following.

Strike 3 owns the copyrights to pornographic films that it distributes through DVDs and through company-affiliated websites. Complaint, Docket No. 1, ¶¶ 2, 3. Strike 3 alleges that Defendant used BitTorrent to infringe the copyrights of 45 of Strike 3's films over an extended period of time. *Id.* ¶ 4; *see* Complaint, Exhibit A, Docket No. 1-1. Strike 3 has filed nearly identical complaints against other John Doe defendants in thousands of federal lawsuits across the country in the last several years. *See Strike 3 Holdings, LLC v. Doe*, No. 18-cv-01075, 2019 WL 935389, at *1 (E.D. Cal. Feb. 26, 2019) ("This case is one of approximately 2,500 nearly-identical cases that plaintiff has filed across the country since October 2017.").

Strike 3 claims that its copyrights have been infringed by various individuals, including the John Doe defendant in this case, who pirate videos anonymously on the Internet via BitTorrent. Strike 3 claims that it has identified John Doe by IP address, and seeks to learn his or her identity to be able to serve process.

The specifics of Strike 3's contentions regarding the detection of infringement and the identification of infringers are somewhat technical. Because the details have been reviewed comprehensively in other judicial decisions, a brief summary will suffice.

BitTorrent refers to a computing process known as the BitTorrent protocol, otherwise known as "torrenting," a method of downloading and sharing digital files. Complaint, Docket

No. 1, ¶¶ 4, 17. *See generally Strike 3 Holdings, Inc. v. Doe*, 621 F. Supp. 3d 145, 148 (D. Mass. 2022) (describing the torrenting process in detail). Instead of downloading files from a single server, BitTorrent allows peers (*i.e.*, users) to download a file that is held by many other peers who engage with the same torrenting website. Memorandum in Support of Motion for Subpoena, Arco Decl., Docket No. 7-2, ¶ 55. BitTorrent also involves breaking a file into smaller pieces, which are assigned unique identifiers that are recognized by torrenting software programs and pieced back together as the downloaded file. *Id.* ¶¶ 45 n.10, 55.

Strike 3 represents that it uses a number of programs, including proprietary torrenting software, to emulate the activity of an actual BitTorrent peer and record the torrenting process for files believed to be films copyrighted by Strike 3. *Id.* ¶¶ 56, 60, 66. The resultant record includes a variety of information, including the IP addresses of the peers who participate in torrenting the file. *Id.* ¶ 62. Strike 3 uses a third-party database to identify the ISPs and the geographic locations associated with IP addresses of those participating peers. *Id*. Strike 3 has hired someone to watch and visually compare the torrented files with the copyrighted films, and that person confirms that the torrented file is identical or substantially similar to the copyrighted matter. *See* Memorandum in Support of Motion for Subpoena, Stalzer Decl., Docket No. 7-3, ¶¶ 7–11. Strike 3 alleges that the IP address identified in the Complaint is associated with Strike 3's records for 45 torrented files that are identical or substantially similar to Strike 3's copyrighted films. *See* Complaint, Exhibit A, Docket No. 1-1.

The anonymizing mechanics of BitTorrent are such that "Internet service providers are the only entities that can link an IP address to its subscriber." *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1206 (D.C. Cir. 2020). Accordingly, Strike 3 contends that a subpoena to the ISP is

3

the only means of determining the identity of any BitTorrent peer who allegedly infringed the copyright of Strike 3's films.

## II. Discussion

Rule 26(d) of the Federal Rules of Civil Procedure allows a party to seek discovery prior to the Rule 26(f) scheduling conference in limited circumstances, including by court order. Fed. R. Civ. P. 26(d)(1). Although Rule 26(d) does not itself set a standard for permitting court-ordered early discovery, courts in this circuit typically require a "good cause" showing.[2] *See, e.g.*, *Strike 3 Holdings*, 621 F. Supp. 3d at 149; *Higgins v. Huhtamaki, Inc.*, No. 21-CV-00369, 2022 WL 523344, at *1 n.3 (D. Me. Feb. 21, 2022); *Jimenez v. Nielsen*, 326 F.R.D. 357, 361 (D. Mass. 2018). The First Circuit has not set the requirements for a "good cause" showing, but courts in the circuit have applied the factor-based analysis identified in *Sony Music Entertainment Inc. v. Does 1–40*:

> (1) a concrete showing of a prima facie claim of actionable harm; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the party's expectation of privacy.

326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004) (citations omitted); *see Strike 3 Holdings*, 621 F. Supp. 3d at 149–51 (applying *Sony Music* analysis to determine that plaintiff had shown good

---

[2] The origin of the "good cause" standard is that, prior to the 2015 amendments to Rule 26, Rule 26(b)(1) provided that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1) (2015). The 2015 amendments to Rule 26 are silent on the standard for court-ordered discovery, and Rule 26(b) now includes only the relevance and proportionality standard that applies to the scope of discovery generally, "[u]nless otherwise *limited* by court order." Fed. R. Civ. P. 26(b)(1) (emphasis added). One court of appeals has questioned whether a good cause showing is still appropriate under the current rule but has not ruled on the issue. *See Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207 n.2 (D.C. Cir. 2020). Strike 3 argues that early discovery is warranted under either the "good cause" standard or the general relevance and proportionality standard. *See* Memorandum in Support of Motion for Subpoena, Docket No. 7, at 5 n.2.

cause for early discovery into identity of anonymous defendant); *London-Sire Recs., Inc. v. Doe 1*, 542 F. Supp. 2d 153, 164–80 (D. Mass. 2008) (applying *Sony Music* analysis to determine whether to quash subpoenas served on defendants' ISP); *see also Media Prods., Inc. v. Does 1–64*, No. 12-CV-30083-MAP, 2013 WL 1092123, at *6 (D. Mass. Feb. 7, 2013) ("The First Circuit has not addressed the proper standard for determining whether good cause exists for expedited discovery."), *report and recommendation adopted*, No. 12-CV-30083-MAP, 2013 WL 1091715 (D. Mass. Mar. 14, 2013).

The Court finds the *Sony Music* factors persuasive and will apply them in cases such as this, which request court-ordered early discovery into the identity of an un-served anonymous party.

As discussed below, the Court finds that Strike 3 has made an adequate "good cause" showing under the *Sony Music* factors.[3]

### A.  Concrete Showing of *Prima Facie* Claim of Actionable Harm

The only claim in Strike 3's Complaint is copyright infringement. Docket No. 1. "To establish copyright infringement, the plaintiff must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Latin Am. Music Co. Inc. v. Media Power Grp., Inc.*, 705 F.3d 34, 38 (1st Cir. 2013) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Strike 3 alleges in the Complaint

---

[3] The same result would follow from the relevance and proportionality requirements of Rule 26(b). Several of the *Sony Music* factors correspond with relevance and proportionality. For example, because there are no alternative means for Strike 3 to obtain Defendant's identifying information, and because that information is necessary to serve process and allow the litigation to progress, the subpoena to the ISP is both proportional to the needs of the case and relevant. *See Strike 3 Holdings*, 621 F. Supp. 3d at 151 ("The Rule 26(b)(1) standard therefore yields the same result as the good cause standard employing the *Sony Music* factors, namely, allowing Strike 3 to serve the subpoena on Verizon seeking the subscriber's name and address together with the notice.").

5

that it owns the copyrights to films which are registered with the United States Copyright Office. Strike 3 also has described its process for identifying IP addresses that have participated in using the BitTorrent protocol to assemble digital files that Strike 3 believes to be copies of its copyrighted films. Using this process, Strike 3 identified 45 files that it claims have been pirated via BitTorrent using the IP address alleged to be controlled by Defendant.

Strike 3 has also plausibly alleged that it is harmed by the torrenting of films that are otherwise only offered through individual sale, licensed broadcast, or access to subscription-based websites. *See* Complaint, Docket No. 1, ¶¶ 13, 16. Accordingly, Strike 3 has made a concrete showing of a *prima facie* claim for copyright infringement and has identified resultant harm.

### B. Specificity of the Discovery Request

The proposed subpoena to Defendant's ISP will "only demand the true name and address of Defendant." Docket No. 7, at 2. This seems appropriately tailored to the *bona fide* needs of this case. Other courts have found that such a request is sufficiently specific. *See Strike 3 Holdings*, 621 F. Supp. 3d at 150 (collecting cases).

### C. Absence of Alternative Means to Obtain the Information

Strike 3 represents that the ISP "is the only party with the information necessary to identify Defendant by correlating the IP address with John Doe's identity." Docket No. 7, at 1–2. This is facially plausible, and other courts have found that plaintiffs in similar BitTorrent copyright infringement cases have no other way to identify anonymous defendants. *See Strike 3 Holdings*, 621 F. Supp. 3d at 150 (collecting cases).

### D.  A Central Need For the Subpoenaed Information to Advance the Claim

Strike 3 states that, without Defendant's name and address, it "cannot serve Defendant nor pursue this lawsuit and protect its copyrights." Docket No. 7, at 2. This, too, makes sense. "Without names and addresses, the plaintiffs cannot serve process, and the litigation can never progress." *Strike 3 Holdings*, 621 F. Supp. 3d at 150 (quoting *London-Sire*, 542 F. Supp. 2d at 179).

### E.  The Party's Expectation of Privacy

Courts have found that there is a limited expectation of privacy for individuals who pirate copyrighted material. *See, e.g.*, *Sony Music*, 326 F. Supp. 2d at 566 ("[D]efendants have little expectation of privacy in downloading and distributing copyrighted [works] without permission.").

That said, as Strike 3 acknowledges, the privacy interests at issue here are heightened by the nature of the films in question. Publicly associating an individual's name with a federal lawsuit for copyright infringement of pornographic films could cause embarrassment and humiliation. *See* Arco Decl., Docket No. 7-2, ¶ 34. Strike 3 notes that other "courts have found it appropriate to issue a protective order establishing procedural safeguards such as allowing a defendant to proceed pseudonymously." Docket No. 7, at 9.

The Court cannot ignore the risk, which other courts have noted in cases involving Strike 3 and other copyright holders of pornographic films, that the embarrassing nature of the litigation might coercively drive settlement agreements. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-2648, 2019 WL 78987, at *4 (S.D.N.Y. Jan. 2, 2019) (citing cases) ("[C]opyright holders such as Plaintiff are repeat litigants who have, in the past, engaged in . . . coercive settlement practices."). One court, in a similar procedural posture, requested supplemental briefing

concerning Strike 3's litigation history. *See Strike 3 Holdings, LLC v. Doe*, 331 F.R.D. 14, 16 (E.D.N.Y. 2019). The court found that Strike 3 invariably discontinues litigation after successfully moving for issuance of an ISP subpoena, either through settlement or dismissal. *See id.* ("[O]f the hundreds of virtually identical cases Strike 3 has filed in this district recently, not one has resulted in adversarial testing of Strike 3's claims, and only one has seen an identified defendant file an answer."); *see also* Order, *Strike 3 Holdings, LLC v. Doe*, No. 22-CV-11752-WGY (D. Mass. Oct. 25, 2022) (noting the "large number of these cases both in this Court and elsewhere").

Notwithstanding Strike 3's representation that it is proceeding in good faith and "does not seek to force anyone to settle unwillingly," the Court agrees with other courts that a protective order is appropriate in these circumstances to assuage privacy concerns. Docket No. 7, at 3; *see Strike 3 Holdings, LLC v. Doe*, No. 19-CV-00945, 2019 WL 4752094, at *3 (E.D.N.Y. Sept. 30, 2019) ("[A] protective order is particularly appropriate in BitTorrent copyright infringement cases involving adult films (and especially in cases involving Strike 3) because few of these cases move beyond the filing of a complaint and granting of a motion for expedited discovery."); *Strike 3 Holdings, LLC v. Doe*, 329 F.R.D. 518, 522 (S.D.N.Y. 2019) (finding good cause to issue protective order where there is "substantial risk for false positive identifications that could result in 'annoyance, embarrassment, oppression, or undue burden or expense'" (quoting Fed. R. Civ. P. 26(c)(1))).

The Court has reviewed protective orders issued in other cases brought by Strike 3 and adopts a protective order similar to the one issued in *Strike 3 Holdings, LLC v. Doe*, No. 20-CV-4501, 2021 WL 535218 (E.D.N.Y. Feb. 12, 2021). This protective order allows Defendant to proceed anonymously, restricts the ability of Strike 3 to initiate settlement negotiations absent

8

court permission, and grants an extended period for Defendant to decide whether to initiate settlement discussions, file a motion to quash the subpoena, or otherwise respond to the Complaint.

The near-total absence of litigated cases arising from the thousands of nearly identical complaints filed by Strike 3 *may* mean that Strike 3 only sues infringers whose liability is uncontestable and that it offers attractive settlement terms. But, given the nature of the copyrighted materials at issue, it also may be that some prospective defendants would be driven to settle out of a fear of being publicly embarrassed as consumers (illicitly or otherwise) of particular pornographic materials. The First Circuit has noted that a "chilling effect" of this kind may warrant permitting parties to proceed anonymously "in cases involving 'intimate issues such as sexual activities.'" *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 71 (1st Cir. 2022) (quoting *In re Sealed Case*, 971 F.3d 324, 327 (D.C. Cir. 2020)). It makes particular sense to permit such anonymity in the early phases of this litigation, given Strike 3's record of settling matters that never go beyond the filing of a complaint. *See id.* at 73 ("District courts must be mindful that 'the balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses.'" (quoting *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000))).

In sum, with an appropriate protective order in place, the circumstances presented in this case satisfy the *Sony Music* factors and weigh in favor of permitting early discovery into the identity of Defendant. Strike 3 has made a showing of good cause, and the Court will permit Strike 3 to serve the requested subpoena upon Defendant's ISP.

### III.   Conclusion

Subject to the conditions of the Protective Order, which is attached as Exhibit A, including the provisions for Notice to Defendant, which is attached as Exhibit B, the Court **GRANTS** Plaintiff's Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference (Docket No. 6) on Defendant's ISP, Comcast Cable Communications, LLC, to obtain Defendant's name and address.

Defendant's ISP, Comcast Cable Communications, LLC, shall provide Defendant with the following: the Subpoena, the Protective Order (Exhibit A), and the Notice to Defendant (Exhibit B).

Failure to comply with any of the conditions of the Protective Order may result in an award of sanctions.[4]

/s/ Paul G. Levenson<br>United States Magistrate Judge

Date: May 6, 2025

---

[4] The parties are hereby advised that under the provisions of Rule 2(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party may move for reconsideration by a district judge of the determination(s) and order(s) set forth herein within 14 days after receipt of a copy of this order, unless a different time is prescribed by this Court or the district judge. The party seeking reconsideration shall file with the Clerk of this Court, and serve upon all parties, a written notice of the motion which shall specifically designate the order or part thereof to be reconsidered and the basis for the objection thereto. The district judge, upon timely motion, shall reconsider the magistrate judge's order and set aside any portion thereof found to be clearly erroneous in fact or contrary to law. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See* Fed. R. Civ. P. 72(a); *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999); *Sunview Condo. Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964–65 (1st Cir. 1997); *Pagano v. Frank*, 983 F.2d 343, 346 (1st Cir. 1993).